FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                       :        Chapter 7

In re:                                   : 

                                         :        Case No. 07-36011 (CGM)

        Joanne F. Killmer,               : 

                                         : 

                            Debtor.       : 

                                         : 
------------------------------------------------------------X

## MEMORANDUM DECISION FINDING VIOLATION OF THE AUTOMATIC STAY AND VOIDING COUNTY'S TAX SALE

**A P P E A R A N C E S :**

McCabe, Weisberg & Conway, P.C.
145 Huguenot Street
New Rochelle, New York 10801
*Attorneys for Beneficial Homeowner Service Corporation*
      By: Charles Higgs, Esq.

Corbally Gartland and Rappleyea LLP
35 Market Street
Poughkeepsie, NY 12601
*Attorneys for Patrick Conway*
      By:  William W. Frame, Esq.

Lewis D. Wrobel, Esq.
201 South Avenue - Ste. 506
Poughkeepsie, New York 12601
*Attorney for Dutchess County*
      By: Lewis Wrobel

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Before the Court are dueling motions by Beneficial Homeowner Service Corporation

("Beneficial") and Dutchess County regarding whether or not a tax sale performed in violation of

the stay is void.  Beneficial is seeking a declaratory judgment that the sale is void.  Dutchess

County is asking that the Court annul the automatic stay, which would render the tax sale valid.

Herein, the Court finds that the factors for annulling the automatic stay have not been met and as

such, the tax sale is void ab initio.

## I.    <u>Jurisdiction</u>

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters

concerning the administration of the estate); (G) (motions to terminate, annul, or modify the

automatic stay).

## II.    <u>Background</u>[1]

### A.  The Bankruptcy Case

The Debtor filed for chapter 13 relief on July 9, 2007.  Joint Stmt. § IV. ¶ A.  Her case

was converted to a chapter 7 case on October 25, 2007.  *Id.* ¶ B.  At the time of filing, the Debtor

was the owner of real property located at 379 Titusville Road in the Town of LaGrange,

Dutchess County (the "Property"), which became property of the estate upon filing.  *Id.* ¶ C.

Pursuant to the certification of Debtor's counsel, Jane Sullivan, as Receiver of Taxes was served

with notice of the bankruptcy case on December 14, 2007.  *Id.* ¶ P.

Beneficial is a listed creditor on the Debtor's petition and schedules.  *Id.* ¶ D.  Beneficial

filed a secured claim in the bankruptcy case in the sum of $185,110.78 on August 1, 2007.  *Id.* ¶

E.  The Debtor's last credited payment on her mortgage loan was for October 2007.  *Id.* ¶ G.

On November 3, 2008, Dutchess County ("County") published the list of properties with

delinquent taxes for the year 2008 or earlier. *Id.* ¶ I.  The Property was on that list.  *Id.*  On

---

[1] Unless otherwise noted, all pleadings cited in this decision are from docket number 07-36011.

February 19, 2010, pursuant to New York Real Property Tax Law, a petition and notice of

foreclosure for certain Dutchess County properties was executed.  *Id.* ¶ J.  On February 23, 2010,

it was filed with the Dutchess County clerk.  *Id.*  The Property was one of the properties listed.

*Id.* No Answer was interposed by any party for the Property.  *Id.* ¶ K.  On July 9, 2010, a

judgment was entered by the New York State Supreme Court awarding possession of the

Property to Dutchess County.  *Id.* ¶ L.  By Deed dated July 14, 2010 the property at 379

Titusville Road, Town of LaGrange was conveyed to Dutchess County.  *Id.* ¶ M.

In October 2010, Patrick Conway ("Conway") purchased the Property from Dutchess

County for $70,000.00, plus an auctioneer's commission of $11,000.00.  *Id.* ¶ N.  Patrick

Conway received a deed dated November 26, 2010 from Dutchess County.  *Id.* ¶ O.

The Debtor's bankruptcy case was closed by order of this Court dated April 14, 2011.

*Id.* ¶ Q.  On October 14, 2013, Beneficial moved to reopen this bankruptcy case so that it could

bring a motion alleging that Dutchess County violated the automatic stay when it foreclosed,

sold, and transferred the deed to the Property, while the case was open.  *See* Mot. Reopen, ECF

No. 38.  The Court issued a memorandum decision granting Beneficial's motion to reopen this

chapter 7 case and allowing Beneficial to move for a declaration that Dutchess County had

violated the automatic stay.  *See* Mem. Decision, ECF No. 49.

That Dutchess County conducted a tax foreclosure and sale (the "Tax Sale") of the

Property in violation of the automatic stay was not a contested issue.  *See* Opp'n. 1, ECF No. 55

(Dutchess County admitted that "Beneficial has established that the actions of Dutchess County

in conducting an *in-rem* tax foreclosure action against 379 Titusville Road, Poughkeepsie, New

York, and a subsequent auction sale as an inadvertent violation of the Automatic Stay of 11

U.S.C. Section 362.").  Rather, Dutchess County now argues that the Tax Sale should not be void

ab initio but rather that the Court should annul the stay to a date prior to the stay violation,

thereby validating the Tax Sale. *Id.*; *see also* Mot. for Annulment, ECF No. 59. Beneficial

opposes such relief and continues to argue that the Tax Sale is void ab initio. Opp'n. 9-10, ECF

No. 68. The Court held a trial on January 31, 2014 in order to determine whether the stay should

be annulled.

At trial, Dutchess County offered the testimony of six witnesses: 1) Jane Sullivan,

Receiver of Taxes and Assignments for the Town of LaGrange ("Receiver of Taxes"); 2) Pamela

Barrack, Dutchess County Commissioner of Finance; 3) Shannon Cardinale, Title Searcher for

Dutchess County; 4) Donna Benedict, Dutchess County Tax Collection Supervisor; 5) Keith

Byron, Esq., Senior Assistant Dutchess County Attorney; and 6) Patrick Conway, purchaser of

the Property. Through this testimony emerged an unsettling depiction of Dutchess County's

indifference to bankruptcy filings in the context of tax foreclosures and sales.

## B. Summary of Testimony at Trial

### i.   Testimony of Receiver of Taxes

Jane Sullivan is the Receiver of Taxes in the town where the Property is located, a

position which she has held for over twenty-eight years. *See* Hr'g Tr. 10:24-25, 11:12. As

Receiver of Taxes, it is her duty to collect property taxes, school taxes, and water and sewer

taxes. *Id.* at 11:15-17. According to her testimony, tax bills are created and printed by Dutchess

County and then are picked up by the individual towns to be mailed out and collected upon. *Id.*

at 12:1-14. Generally, the Receiver of Taxes mails out property tax bills around the beginning of

February and collects on them until May 31st of that same year. *Id.* at 12:13-14. On May 31st,

the collection period ends and the town "can[not] accept any more payments." *Id.* at 12:17-22.

Once collection ends, a list of all unpaid taxes is prepared by the Receiver of Taxes and is sent to Dutchess County. *Id.*

The Town of LaGrange follows a similar procedure for the collection of school taxes. The school tax bills are mailed out at the beginning of September and are due around the beginning of October. *Id.* at 13:2-3. A list of school taxes that remain unpaid by the beginning of November is sent by email to the Dutchess County before eventually being sent to the school district. *Id.* at 13:8-25.

There are no protocols that the Receiver of Taxes follows when a resident files for bankruptcy. *Id.* at 15:14-19:22. The Receiver of Taxes does not independently verify whether a resident has filed for bankruptcy prior to mailing out a tax bill. *Id.* at 17:5-9. Nor does the Receiver of Taxes take any steps to stop collection or notify Dutchess County if she received notice of a bankruptcy filing directly. *Id.* at 18:6-19. No notations are made to any paper or electronic files. *Id.* at 16:5-15. Rather, the Receiver of Taxes simply places the paper notice into storage. *Id.*

      ii.    Testimony of Commissioner of Finance

Pamela Barrack is the Commissioner of Finance for Dutchess County ("Commissioner of Finance"). *Id.* at 22:4. As Commissioner of Finance, she is the chief fiscal officer of Dutchess County and oversees the County's finances. *Id.* at 22:10-14. Her duties include managing real property taxes and the delinquent tax process. *Id.*

According to her testimony, after Dutchess County receives the list of residents who are delinquent on their property taxes, Dutchess County sends a delinquency notice via first class mail. *Id.* at 23:8-10, 24:14-16. If property taxes remain unpaid in November, Dutchess County files a list of delinquent taxes with the county clerk and publishes the names of the residents who

failed to pay taxes in two county papers. *Id.* at 24:19-25:6. Additionally, periodic notices are sent out. *Id.* at 30:1-11.

Approximately, sixteen months after the property taxes were due, Dutchess County sends out letters by certified and first class mail notifying residents that the foreclosure process is about to begin. *Id.* at 31:1-12. In this case, Debtor had until May 28, 2010 to pay the delinquent taxes in order to prevent the foreclosure. *Id.* Once that time frame runs and no payment is made, a search is done to determine whether any owners of the properties with delinquent taxes filed for bankruptcy. *Id.* at 36:7-17.

If it is determined that there is no bankruptcy filing, Dutchess County list of parcels is sent to the court to get a judgment of foreclosure on each parcel. *Id.* at 36:1-5. Once the judgment of foreclosure is entered, Dutchess County files a deed in the count clerk's office indicating that the owner of the property is now Dutchess County. *Id.* at 36:7-12. The next step is for Dutchess County to hold a public auction to sell all of the parcels on the county's list. *Id.* at 37:15-18. A property owner has until 5:00 p.m. on the day of the auction to purchase the property back from the County. *Id.* at 37:19-23.

On direct examination, the Commissioner of Finance testified that a bankruptcy search was performed prior to foreclosing on the Property and no bankruptcy case was found. Later, on cross-examination, she indicated that a bankruptcy case did come up in the search but was not considered relevant because the Debtor has received a discharge. *Compare id.* at 33:4:-6 *with* 54:2:56:11. She also indicated that she did not know exactly how records were marked to indicate that a person had filed for bankruptcy. *Id.* at 56:19-57:2. She advised that her tax supervisor would be more knowledgeable on the subject. *Id.*

     iii.    Testimony of Title Searcher for Dutchess County

Sharon Cardinale is employed by Dutchess County as a title searcher, a position she has held for over ten years. *Id.* at 60:16-21. Part of her job is to search records for delinquent tax parcels each year, which includes running title searches, lien searches, and bankruptcy searches. *Id.* at 60:24. According to Ms. Cardinale, there are three bankruptcy searches performed for each parcel of property that is delinquent on taxes. Ms. Cardinale was the title searcher who performed the bankruptcy search on the Debtor. *Id.* at 64:1.

In the ten years that Ms. Cardinale has been employed by Dutchess County, she has had no formal training—other than to be trained by the person who held her position prior to her. *Id.* at 65:17-25. She has had no legal training. *Id.* at 69:20-21. She simply looks at PACER[2] to determine whether the bankruptcy is "open or not" and no lawyer oversees her work. *Id.* at 64:21-65:1. Ms. Cardinale is not familiar with the differences between bankruptcies filed under chapters, 7, 13, and 11. *Id.* at 69:10.

Ms. Cardinale believes that a case is "open"[3] if it is not marked as discharged on PACER. *Id.* at 69:4-6. Ms. Cardinale testified that she does not check for any additional information when performing a bankruptcy search, such as which chapter a debtor has filed under. *Id.* at 64:19-23. If Ms. Cardinale finds a bankruptcy and determines that it is "open," she emails the finance department and provides them with a copy of the "actual bankruptcy." *Id.* at 66:18-23. She then enters the fact that there is an "open" bankruptcy into an Excel spreadsheet. *Id.* at 67:14-67.

---

[2] "Public Access to Court Electronic Records (PACER) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district and bankruptcy courts, and the PACER Case Locator via the Internet. PACER is provided by the federal Judiciary in keeping with its commitment to providing public access to court information via a centralized service." *See* www.pacer.gov.
[3] The Court is using the term "open" here in quotes in an attempt to distinguish Ms. Cardinale's perception that a bankruptcy case is open from whether a bankruptcy case is or is not officially closed.

According to Ms. Cardinale, the bankruptcy search of the Debtor indicated that a bankruptcy had been filed and that the Debtor had received a discharge in 2008. *Id.* at 64:3-5. She reported that the Debtor was "no longer in bankruptcy due to the discharge." *Id.* at 64:8-9. Ms. Cardinale stated that "when a mortgage is satisfied, there is a discharge filed and that means that the mortgage is satisfied. So with the PACER, it's the same -- it's the same thing." *Id.* at 65:1-4. She did not mark the Debtor's file in such a way because "the file was not in bankruptcy." *Id.* at 67:24.

When asked whether she checks to see if a bankruptcy case has been marked as "closed," she indicated that she does not. *Id.* at 69:2. The procedure that she follows is to look to see whether a debtor has received a discharge and if so "that means that the bankruptcy is no longer valid. It's been terminated." *Id.* at 68:21-23; see also 69:13-17 ("[W]hen I do a bankruptcy search, I -- I look at the owner, record owner of the property. In PACER, I put their names in and I search for them to see if they're in bankruptcy and if I -- it says 'discharged', to me, that means that there's no longer a case."). According to her testimony, Ms. Cardinale was trained by the person who previously held her position that it is the policy of Dutchess County that the term "discharged" means that a bankruptcy is "no longer in effect." *Id.* at 72:5-14.

    iv.    Testimony of Donna Benedict

Donna Benedict is the tax collection supervisor ("Tax Collection Supervisor") for Dutchess County, a position she has maintained for twenty-six years. *Id.* at 74:20-24. As Tax Collection Supervisor, she receives notifications of bankruptcy filings via mail, via fax, from the title searchers and in person. *Id.* at 75:2-13. Once she receives information that a resident has filed for bankruptcy, she labels the account in the computer system with a "B" for bankruptcy and stops collection activities, including the foreclosure process. *Id.* at 75:16-23. She works

almost entirely from an electronic file which is provided by the town.  *Id.* at 77:3.  She does not

do an independent search for bankruptcy filings.  *Id.* at 75:24-76:1.  She was never notified of the

Debtor's bankruptcy filing in this case. *Id.* at 76:4.

       v.    Testimony of Keith Byron, Esq.

      Keith Byron is the senior assistant county attorney for Dutchess County; he has held that

position since 1985.  *Id.* at 84:20-85:4.  In his position, he represents the Department of Human

Resources, the Dutchess County Sherriff's Department, the Department of Mental Hygiene, as

well as the Departments of Finance and Real Property Tax.  *Id.* at 85:7-88:17.

      According to his testimony, taxes are levied for the upcoming year; for example, the 2008

taxes are levied in 2007 for 2008.  *Id.* at 89:19-20.  Towns have no ability to enforce taxes so if a

town does not receive payment on a tax that was billed, it is up to the county to enforce the taxes.

*Id.* at 89:25-90:3.  Dutchess County pays the towns for all taxes that are not collected and then

takes over the collection and enforcement of those unpaid taxes.  *Id.* at 90:4-7.

According to Mr. Byron, the County has corrected its procedure with regard to bankruptcy cases.

*Id.* at 92:12-22.  Now that he is aware of what occurred in this case, he stated that "if there's a

question as to whether or not the bankruptcy case has been closed or otherwise terminated, that

will be a decision [he] make[s] and [the County employees] understand that now only [he]

make[s] that decision."  *Id.*  Any questions about bankruptcy should all be brought to him and he

will check PACER himself and determine how to proceed.  *Id.* at 105:5-6.  No one else is

permitted to make any determinations about a bankruptcy case. *Id.* at 105:7-11.

      Mr. Byron then went on to state that he did not advise Ms. Cardinale, the title searcher, of

this new policy.  *Id.* at 93:15-23.  Mr. Byron stated that he did not inform her because she only

performs a title search, which is passed on to another department, and she does not make a

decision as to whether to move forward with a foreclosure or not. *Id.* He clarified this by stating

that title searchers for Dutchess County, such as Ms. Cardinale, prepare a document that shows

who is to be notified on a foreclosure action and send that document to the finance department,

where Donna Benedict works. *Id.* at 94:4-15. He went on to state that it is Donna Benedict who

actually enforces the delinquent taxes and it is she who has been told that anything marked

"bankrupt" should be referred to him for a determination. *Id.* at 94:11-15.

According to Mr. Byron, he spoke directly with Ms. Cardinale and advised her that

"discharged" is not the same as closed and she now "should be aware" that there is a difference.

*Id.* at 94:16-24. He did not inform her that he is the sole decision maker as to whether a

bankruptcy affects their foreclosure action because her department only does title searches and

does not make a decision about whether or not collection moves forward. *Id.* at 93:17-23.

According to his testimony, that "is not the real property tax department['] purview."[4] *Id.* at

93:21.

Rather, he explains that the procedure is for title searchers to write "bankruptcy" on the

top of the "parties to be notified sheet" and then walk that sheet over to the finance department.

*Id.* at 95:3-10; 98:1-3; 100:1-7. Mr. Byron did not appear to be aware of any electronic files

where bankruptcy information would be stored. *Id.* at 95:11-22. This is the "preeminent sheet"

and the "most important document" because if you lose that sheet the County cannot "go

forward" with the foreclosure. *Id.* at 98:21-25.

     vi.    Testimony of Patrick Conway[5]

---

[4] Mr. Byron later testified that the title searchers are now part of the finance department as the real property tax department is no longer a separate department. *See* Hr'g Tr. 100:1-3.
[5] The Court took the testimony of the Purchaser conditionally until it made a determination on the relevance of his testimony to the annulment of the stay.

Patrick Conway purchased the Property from Dutchess County at the Tax Sale. *Id.* at

107:8-18. He purchased the Property for approximately $81,000 and has paid approximately

$20,000 in real property taxes. *Id.* at 107:20-21; 113:1-5. He did not receive assurances as to the

title from the County. *Id.* at 114:9-11.

At the close of trial, the Court permitted the parties to file post-trial briefs, which were

filed on April 30, 2014. *See* Beneficial Memo, ECF No 87; Dutchess County Memo., ECF No.

88.

## III.    Discussion

### A.  Stay Violation

The automatic stay, which is generally a very simple concept, becomes complicated when

a taxing authority is involved. Section 362(b)(9) excepts government units noticing and assessing

tax deficiencies from the automatic stay. 11 U.S.C. § 362(b)(9)(B), (D). Section 362(b)(9)(D)

states that the stay is inapplicable to "the making of an assessment for any tax and issuance of a

notice and demand for payment of such an assessment (but any tax lien that would otherwise

attach to property of the estate by reason of such an assessment shall not take effect unless such

tax is a debt of the debtor that will not be discharged in the case ***and*** such property or its

proceeds are transferred out of the estate to, or otherwise revested in, the debtor." 11 U.S.C. §

362(b)(9)(D) (emphasis added). Also excepted from the stay is "the creation or perfection of a

statutory lien for an ad valorem property tax, or a special tax or special assessment on real

property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment

comes due after the date of the filing of the petition." 11 U.S.C. § 362(b)(18). While a taxing

authority may assess, notice, and create and perfect a lien for ad valoreum property taxes, a

taxing authority is not permitted to enforce its lien free of the automatic stay as such enforcement

would "deprive the estate of use and possession of the property." 3 Collier on Bankruptcy ¶ 362.05[17] (16th ed. 2014); *see also In re Killmer*, 501 B.R. 208, 212-13 (Bankr. S.D.N.Y. 2013) (explaining that the stay continues as to property of the estate despite the debtor receiving a discharge).

There is no dispute that Tax Sale took place while the automatic stay was in effect. 11 U.S.C. § 362(c)(1); *see also* Opp'n. 1, ECF No. 55 (Dutchess County admitting that there was a stay violation). Where the stay has been violated, any proceedings or actions described in § 362(a)(1) are void and without legal effect if they occur after the automatic stay takes effect. *See E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987); *In re Bell*, 1995 WL 17819381, at *2 (Bankr. S.D.N.Y. Dec. 29, 1995) (by definition, a transaction that is "void" is "nugatory and ineffectual" such that no action or confirmation may cure it). This is true even if a creditor received no notice of the stay. *In re Heating Oil Partners*, 2009 WL 5110838, at * 9 (D. Conn. Dec. 17, 2009).

As it is undisputed that Dutchess County violated the stay by conducting Tax Sale, the sale and subsequent transfer of the deed are void unless Dutchess County establishes that annulment of the stay is warranted. *See* Opp'n. 1, ECF No. 55.

## B. Annulment of the Stay

The Bankruptcy Code provides bankruptcy courts with the power to annul the automatic stay. *See* 11 U.S.C. § 362(d). "[A]n order 'annulling' a stay [has] retroactive effect, and thereby reaches back in time to validate proceedings or actions that would otherwise be deemed void *ab initio*." *E. Refractories*, 157 F.3d at 172. Retroactive relief is available "only sparingly and in

compelling circumstances." *Sores v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978

(1st Cir. 1997).

The party moving for retroactive relief bears the burden of establishing cause for such

relief. *See In re WorldCom, Inc.*, 325 B.R. 511, 521 (Bankr. S.D.N.Y. 2005).   Bankruptcy

courts should consider the following factors when determining whether to annul the stay:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing
> and, therefore, of the stay,  (2) if the debtor has acted in bad faith, (3) if there was
> equity in the property of the estate, (4)  if the property was necessary for an
> effective reorganization, (5) if grounds for relief from the stay existed and a
> motion, if filed, would likely have been granted prior to the automatic stay
> violation, (6) if failure to grant retroactive relief would cause unnecessary
> expense to the creditor, and (6) if the creditor has detrimentally changed its
> position on the basis of the action taken.

*Id.*

> i.   Actual or constructive knowledge

As to the first factor, whether Dutchess County had actual or constructive knowledge of

the bankruptcy, evidence at trial proved that Dutchess County had actual knowledge of Debtor's

bankruptcy filing prior to the Tax Sale.  Ms. Cardinale stated that Debtor's bankruptcy filing

came up in a PACER search that she performed.  *See* Hr'g Tr. 63:25-64:9.  Since the Debtor was

shown as having received a discharge in 2008, Ms. Cardinale believed that the Debtor was "no

longer in bankruptcy."  *Id.* at 64:8.

While the discharge is entered near the end of a majority of cases, the discharge does not

end, close, or terminate a bankruptcy case.  The distinction between a discharge and the closing

of a case is especially important in this context as the Property continued to be property of the

estate.  As was explained in the Court's memorandum decision reopening this case, the

automatic stay ceases to protect the individual debtor once a discharge is entered but the stay

continues to protect *property of the estate* after the discharge order is entered and until the case is

closed or the property is formally abandoned.  *See In re Killmer*, 501 B.R. 208, 213 (Bankr.

S.D.N.Y. 2013) (explaining the difference between §§ 362(c)(1) and (c)(2)).  The distinction is

not insignificant.  In many chapter 7 cases, a discharge order is entered as a matter of course

once the deadline to object to a debtor's discharge has passed.   The entry of the discharge order

does not affect the chapter 7 trustee, who often continues to investigate the pre-petition assets of

the debtor and tracks down property of the estate after its entry.  The automatic stay is necessary

to protect property of the estate that the chapter7 trustee is investigating and liquidating for the

benefit of creditors.

The scenario that occurred in this case is exactly the scenario that Congress sought to

prevent in enacting § 362(c)(2).  The order discharging the Debtor was entered on February 13,

2008.  Disch. Or., ECF No. 20.  The discharge order eliminated the Debtor's legal obligation to

pay a pre-petition debt; it did not affect property of the estate in any way.  *Id.*  Prior to the

discharge order being entered on January 29, 2008, the chapter 7 trustee filed his notice of

possible dividends on January 29, 2008, indicating that he believed that there may be property of

the estate that he could liquidate and distribute to the Debtor's unsecured creditors.  Ntc., ECF

No. 16.  The notice did not indicate what property he intended to liquidate so there would be no

way for Dutchess County to know whether the trustee intended to sell the Property or not.  *Id.*

By holding the Tax Sale, the County deprived the chapter 7 trustee of his ability to liquidate that

property for the benefit of creditors.  It is for this reason that property of the estate continues to

be protected by the automatic stay.  *See* 11 U.S.C. §§ 362(c)(2), 554(c)-(d).

Dutchess argues that the stay violation was not intentional and was caused by an incorrect

interpretation of law.  *See* Dutchess County Memo. 1-3, ECF No. 88.  Ms. Cardinale's belief that

an order discharging a debtor terminates a bankruptcy proceeding appears to have been an honest

mistake of law but unfortunately for Dutchess County, "not even a good faith mistake of law or a

legitimate dispute as to legal rights relieve a willful violator of the consequences" of a stay

violation." *In re Sullivan*, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007) (citation omitted). A party

can be charged with a willful violation of the stay so long as the violator has knowledge of the

bankruptcy filing and "possesse[s] general intent in taking actions which have the effect of

violating the automatic stay." *See Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 349

(Bankr. S.D.N.Y. 1998) (citation omitted).

The PACER search was not the County's only ability to learn of the Debtor's bankruptcy

filing. The Receiver of Taxes received notice of the bankruptcy filing on December 14, 2007.

*See* Am. Scheds., ECF No. 12 (adding the Receiver of Taxes as a creditor and serving notice of

the filing to her business address). The Receiver of Taxes testified that when she receives

bankruptcy notices she places the notice in storage. She does not alert the County to the fact that

a bankruptcy has been filed and she does not mark the file to indicate that there has been a

bankruptcy filing. Instead, notices and bills continue to be sent to a debtor as if no bankruptcy

had been filed.[6] Moreover, the Town of Lagrange has no incentive to inform the County when it

receives a bankruptcy notice because Dutchess County compensates the town for unpaid taxes

that it expects to collect in the future. It appears that the neither the Town of Lagrange nor

Dutchess County has any policy in place for how bankruptcy notifications should be handled

during the time the town is collecting taxes. Had such a policy been in place, Dutchess County

would have known about the Debtor's bankruptcy filing as early as December of 2007.

The Court need not determine whether the notice that was sent to the Receiver of Taxes

was sufficient to put the County on notice as the County had actual notice of the bankruptcy

---

[6] Despite the fact the governmental units are permitted to assess taxes and issue a notices of tax deficiency to a
debtor, it seems unwise for a property owner's bankruptcy filing to be completely ignored without so much as
marking a file. *See* 11 U.S.C. §§ 362(b)(9)(B); (D).

filing prior to the Tax Sale.  Moreover, as will be discussed later in this decision, the County
does not appear to have implemented a more reliable system for receiving notice of bankruptcy
petitions.  This factor weighs against annulment.

  ii. Debtor acted in bad faith

  As to the second factor, there is no indication that the Debtor acted in bad faith.  Dutchess
County argues that Beneficial was negligent in pursuing its rights.  According to Dutchess,
Beneficial waited over two years to foreclose on this property.  Beneficial argues that it did not
foreclose because the Debtor was in a chapter 13 and Debtor was current on the mortgage at the
time of conversion to a chapter 7 on October 25, 2007.  The stay remained in place after the
County's sale and until the case was closed on April 14, 2011.   Beneficial did not seek stay
relief during that time.  It argues that obeying the stay should not count against it.

  The Court agrees.  It cannot fault Beneficial for abiding by the Bankruptcy Code and
waiting until the Property ceased being property of the estate before beginning the foreclosure
process.  This factor is neutral.

  iii. Equity in the property

  As to the third factor, the Debtor's petition indicates that there was equity in the property
at the time of filing.  Vol. Pet. 7, ECF No. 1.  Debtor listed the value at $255,000 on schedule A
of her petition and listed a secured claim in the amount of $239,000.  *Id.*

  Dutchess argues that there is no equity in the property.  Beneficial points out that
pursuant to § 362(g), the party requesting annulment of the stay bears the burden of proof on the
issue of the debtor's equity in property.  *See* 11 U.S.C. § 362(g).  Dutchess County did not
present an appraisal of the Property at trial.  As such, the Court cannot make a finding as to
whether there was equity in the Property.

This factor weighs against annulment as the petition shows equity in the Property and no evidence has disputed this.

iv.    Necessary for an effective reorganization

This is a discharged chapter 7 case and as such, the property is not necessary for reorganization.  Moreover, the case has been closed for almost three years and the Debtor has not been residing in the home for even longer.   Both parties appear to agree that the property is not necessary for an effective reorganization.

v.    Whether grounds for relief from stay exist

Dutchess' sole argument appears to be that because there was no equity in the property, relief from stay would have been granted.  Again, it is Dutchess' burden to demonstrate that there was no equity in the property and Dutchess has failed to provide evidence as to this.  The schedules filed in this case indicate that there may have been equity and that makes this factor neutral at best.

vi.    Failure to grant annulment would cause unnecessary expense to creditor

Dutchess County argues that it faces a "great hardship" if it is required to reverse the sale. It also argues that Mr. Conway (the purchaser) would face hardship as well as he paid $81,000 for the property and spent over a hundred thousand more in renovations.

Beneficial argues that the County would be put in the same position it would have been had no stay violation occurred.  Dutchess could begin the foreclosure process and resell the home. The real question, it argues, is whether the expenses are "unnecessary," citing *WorldCom*. There is no doubt that voiding the tax sale would cause Dutchess County expenses.  Those expenses are only "unnecessary" if the Court agrees that the stay should have been terminated. *See In re WorldCom, Inc.*, 325 B.R. at 522.  Beneficial argues that granting retroactive stay relief

would cause it to lose its first mortgage lien and would cause JP Morgan Chase to lose its second mortgage lien.

While Dutchess County may be caused expenses if the stay is not annulled, its harm is caused by its own failure to adhere to the automatic stay.  Beneficial will be harmed if the stay is annulled.  It would be inequitable to ask Beneficial, a company that's actions were consistent with the Code, to suffer on account of the County's stay violation.

   vii.    Detrimental change in position

Dutchess argues that where a creditor has sold or otherwise disposed of property and where Debtor has been evicted, it has been said that there is a material alteration of its position based upon the action taken.  *See In re Stockwell*, 262 B.R. 275, 282 (Bankr. D. Vt. 2001).

Beneficial does not dispute that Dutchess changed its position.  However, it argues that the change was caused directly by a violation of the stay, which caused damages to creditors, such as itself, who relied on the County to have performed due diligence.

Dutchess asks this Court to follow *In re Williams*, 257 B.R. 297 (Bankr. W.D. Mo. 2001). The *Williams* case is not on point.  The court in *Williams* stated that actions taken in violation of the stay are "voidable" while the Second Circuit has declared actions taken in violation of the stay to be void *ab initio*; the court found that the attorneys for the creditor who violated the stay "acted in a good faith belief that the bankruptcy proceeding had been dismissed;" and the creditor had previously moved for relief from stay during the bankruptcy case and swiftly moved for annulment or relief once it learned that the dismissal had been vacated.

Unlike in *Williams*, the stay violation in this case was not caused by a "good faith" mistake on the part of Dutchess County.  Rather, the evidence presented at trial showed that Dutchess County's bankruptcy policy is unorganized if not completely lacking and that the same

violation could occur just as easily today.  Each of the five witnesses that testified regarding the

tax collection and foreclosure process in Dutchess County provided wildly different accounts of

the County's prior and current bankruptcy practices.

Dutchess County does not appear to have any procedures in place to prevent foreclosure

notices from being sent to residents in bankruptcy.  Apparently, the only people who actively run

PACER searches and make determinations about whether a resident has an active bankruptcy

case are the title searchers—though neither the Tax Collection Supervisor nor the senior assistant

county attorney for Dutchess County seemed to know that the title searchers performed such a

task.  The title searchers, therefore, are the County's number one defense against bankruptcy stay

violations as they have access to bankruptcy information in real-time via PACER.  The rest of

the County employees appear to rely on receiving bankruptcy notification from the debtor or the

bankruptcy court.  Yet, where a stay violation occurs, it is the creditor, not the debtor, who has

the affirmative duty to "put the debtor back to the status quo" as it existed at the time of the

filing. *In re Webb*, 472 B.R. 665 (Table), 2012 WL 2329051, at *14 (B.A.P. 6th Cir. Apr. 9,

2012) (citations omitted).

The title searchers receive no formal training and must rely on what they are taught by

the person who held their position before them.  The County does not provide any oversight for

the work that they perform.  Mr. Bryon, the senior assistant county attorney, appears to believe

that the title searchers do not make any independent assessment about whether a resident has

filed for bankruptcy.  Yet, the title searcher that testified at trial stated that the policy of her

department is not to mark a file as "bankrupt" if that person has received a discharge.

Even more concerning than the fact that the title searchers are not trained or supervised,

is the fact that none of the County's witnesses gave consistent testimony regarding the County's

policy for marking files as bankrupt. The title searcher stated that she marked an Excel

spreadsheet as well as a paper file; the Tax Collection Supervisor stated that she marks a "B" for

bankruptcy on the files and indicated that the files were exclusively electronic; the senior

assistant county attorney indicated that the parties to be notified sheet is marked with

bankruptcy. While it is clear that each of the witnesses understood that files should be marked if

a bankruptcy case is filed and collection activity should stop, it is also clear that the County does

not have one overarching procedure for ensuring that this occurs.

Mr. Byron testified that he fixed the problem that occurred in this case by informing the

Tax Collection Supervisor that any bankruptcy determinations should be made by him. He

appears to have missed the bigger picture. Bankruptcy determinations are made by the title

searchers before they even get to the Tax Collection Supervisor. The title searchers do not

simply print out searches and mark files—as he appears to believe. Rather, they check PACER

and make an independent assessment about whether the bankruptcy case is "open" or not—

whether the filing matters or not, without having any training in basic bankruptcy law. The Tax

Collection Supervisor does not independently review for bankruptcy in PACER. She relies

solely on information provided by the title searchers, court notices, and individual bankrupt

residents.

Clearly, there is a County-wide problem with how bankruptcy cases are researched and

addressed and there is no evidence that that problem has been resolved. The Court finds that

Dutchess County had actual notice of this Debtor's bankruptcy filing and that its policies and

procedures are such that this situation could happen again if they are not changed. Thus, the

factors and the equities weigh in favor of denying the County's motion to annul the automatic

stay.

## C.  Other Considerations

Dutchess County argues that the stay should be annulled under the "balancing of the

equities" test as outlined in *In re Fjeldsted*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003).  *See*

Dutchess County Memo. 4-5, ECF No. 88.  In *Fjeldsted*, the court set out the following twelve

factors to consider when deciding whether to annul the stay:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test);
5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;
9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor; and
12. Whether stay relief will promote judicial economy or other efficiencies.

293 B.R. at 25 (internal citations omitted).  Even under this test, it would be inappropriate to

annul the automatic stay.  Factors one, two, four, and six are not relevant as there is no evidence

that the Debtor acted in bad faith.  This is the Debtor's only bankruptcy filing and there is no

indication that the Debtor intended to delay or hinder her creditors by filing.  This was an asset

case and creditors received a pay out on their claims.  *See* Trustee's Aff. Final Dist., ECF No. 34.

The Debtor will not be injured by annulment and as such factor eleven is either neutral or weighs

in favor of granting annulment.

Factor three is applicable and weighs in favor of annulment as there is a third party purchaser who stands to lose the Property that he purchased at the illegal Tax Sale. Factor five weighs against granting the annulment as Dutchess County had actual notice of the bankruptcy and its ineffective bankruptcy compliance system compounded the problem. Factor seven weighs against annulment as the status quo can be restored by transferring title back to the Debtor. The fact that the Purchaser may have to give up title to the Property has already been considered by the Court as part of factor three. Factor eight is neutral as Beneficial will be harmed by annulment of the stay and Dutchess County will be harmed if the stay is not annulled.

Factors nine and ten weigh against annulment. Instead of coming to the Court, upon learning of the stay violation, Dutchess County appeared at the hearing on whether to reopen this bankruptcy case and argued against reopening. *Killmer*, 501 B.R. at 210 (listing Mr. Byron as making an appearance at the hearing on behalf of Dutchess County). Once reopened, Dutchess County did not immediately file a motion seeking to annul the stay; rather, it raised annulment of the stay as a defense to Beneficial's motion seeking a declaratory judgment that the stay had been violated. *See* Opp'n., ECF No. 55 (filed over six weeks after case was reopened); Mot. Annul, ECF No. 59 (filed over six weeks after case was reopened).

As to factor twelve, whether stay relief will promote judicial economy or other efficiencies, it may be true that annulling the stay will allow all of those involved to exert less effort presently but annulling the stay will not promote judicial economy in the long run. If the Court forgives this infraction, Dutchess County may be less likely to institute policies that will prevent future stay violations.

Annulment of the stay is appropriate only in compelling circumstances. *Sores v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978 (1st Cir. 1997). A perfect example of

when annulment of the stay is appropriate can be found in *In re Hall*, 216 B.R. 702 (Bankr.

E.D.N.Y. 1998).  In *Hall*, the bankruptcy court annulled the automatic stay in order to prevent

"persistent abuses" by a serial filer, who had filed four petitions in less than two years in order to

prevent a foreclosure.  *Id.* at 705.  The bank had foreclosed on the debtor's home just six days

after the debtor's fourth bankruptcy filing and the bank was not aware of the filing until after the

sale took place. *Id.* at 703.  The bankruptcy court determined that the stay should be annulled in

light of debtor's abuse of the bankruptcy system.  *Id.* at 711 ("In light of the abuse of the

bankruptcy process on at least four occasions by the debtor within a period of less than two

years, the more than $10,000 incurred by [the bank] in foreclosure costs and fees (including

advances to pay the accruing real estate taxes), the extended history of nonpayment for use and

occupancy of the premises, the intentional decision not to notify the judgment creditor of the last

filing in time to avert the scheduled foreclosure sale, and the utter impossibility of the debtor's

confirming a feasible plan in this one-creditor case present a compelling showing of cause for the

annulment of the automatic stay.").

  The stay violation at issue here is not the kind of inadvertent violation that annulment is

meant to protect.  The Debtor in this case is not a serial filer and she has not abused the

bankruptcy process.  Rather, Dutchess County foreclosed on the Debtor's home despite having

actual notice of the bankruptcy filing due to the fact that the County's system for identifying and

tracking bankrupt files is wholly inadequate.  The County is the root of its own problem and it

must figure out a way to prevent similar situations going forward.

## Conclusion

For the foregoing reasons, the Court denies Dutchess County's motion to annul the automatic stay and as such, the Tax Sale that occurred while the stay was in effect is void ab initio.  Beneficial should submit an order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
      July 3, 2014        _/s/ Cecelia G. Morris_____
                          CECELIA G. MORRIS
                          CHIEF UNITED STATES BANKRUPTCY JUDGE